UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on April 29, 2005

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| | : | 18 U.S.C. § 1344 (Bank Fraud) |
| | : | 18 U.S.C. § 2314 (Interstate Transportation of |
| CHRIS ASHER, | : | Property Obtained by Fraud) |
| a/k/a, CHRISTIAN S. ASHER, | : | Title 22 D.C. Code § 3821(a) (1981 ed.) (Fraud |
| CLIFFORD ASHER, | : | in the First Degree) |
| JUAN A. MAYET, JR., ESQ., | : | |
| | : | |
| Defendant. | | |

### INDICTMENT

The Grand Jury charges that:

### Introduction

1.      Defendant Chris Asher, a/k/a Christian S. Asher, a/k/a Clifford Asher, a/k/a Juan A. Mayet, Jr. (hereinafter "ASHER"), a citizen of Ghana, came to the United States in 1991, and remained in the United States under political asylum. ASHER, who had been a lawyer in Ghana, attended law school in the United States at Howard University, Washington, D.C. ASHER received his license to practice law in the District of Columbia, and, at all times relevant to this Indictment, maintained an office at 3332 Georgia Avenue, N.W., Washington, D.C., doing business as Universal Law Center, or at an office located at 5309 Georgia Avenue, N.W., Washington, D.C.

2.      ASHER was disbarred from the practice of law in the District of Columbia on December 23, 1999. He appealed the disbarment, but that decision was affirmed on May 24, 2001, in an opinion issued by the District of Columbia Court of Appeals. See In re Chris A. Asher, 772 A.2d 1161 (D.C. 2001).

3. Even after he was disbarred from practicing law in Washington, D.C., ASHER continued to hold himself out as a lawyer in good standing in Washington, D.C. as well as other jurisdictions.

4. On March 5, 2001, ASHER was disbarred from practicing law in Maryland. The disbarment occurred because although ASHER was not licensed to practice law in Maryland, he was still holding himself out as a lawyer, and still practicing law in Maryland.

5. During all time periods relevant to this Indictment, ASHER practiced law throughout the greater Washington, D.C. area. ASHER had been able to develop a client base that consisted of many members within the Ghanan-American community in the greater Washington, D.C. area. Many of ASHER's clients were unfamiliar with the American legal system and relied upon ASHER to provide them with legal advice and service.

6. In the normal course of his law practice, both before and after he was disbarred from the practice of law, ASHER obtained from his clients their names, addresses, social security numbers, dates of birth, and other identifying information. In addition, ASHER also obtained access to various clients' bank accounts and their bank account information.

## COUNTS ONE THROUGH FIVE – MAIL FRAUD

7. Between on or about September 1998 and June of 2001, in the District of Columbia and elsewhere, ASHER knowingly and with intent to defraud, in the District of Columbia and elsewhere, willfully and knowingly devised a scheme and artifice to defraud others of money.

### Purpose of the Scheme and Artifice

8. It was a purpose of the scheme ans artifice that ASHER would obtain money fraudulently from others for his own use and benefit.

## Description of the Scheme

9. At all times relevant to this Indictment, ASHER knowingly executed a scheme to enrich himself in a manner and means more fully described below, among other things.

10. It was a part of the scheme that ASHER forged the signature of one of his clients on different checks, and deposited those forged checks into his personal bank account, in order to fraudulently obtain money that the client had recently inherited from a relative.

11. It was a part of the scheme that ASHER lied to a federal judge in Cincinnati, Ohio, by, among other things, making court appearances before that judge by falsely assuming the identity of another attorney, because at the time, ASHER was disbarred, and therefore unable to practice before that judge using his correct identity.

12. It was a part of the scheme that ASHER stole a mortgage settlement check from a client, for whom ASHER had fraudulently promised he would obtain a second mortgage.

13. It was a part of the scheme that ASHER financially profited from, and established, sham marriages among clients and other individuals, in violation of federal immigration law, knowing that the client and the other individuals did not lawfully intend to live as a married couple.

14. It was a part of the scheme that ASHER stole from various clients by settling lawsuits that he had brought on their behalf, depositing the settlement checks into his own personal bank accounts, and then concealing from these clients that he had settled these cases on their behalf.

15. It was a part of the scheme that ASHER used various personal client information, such as their names, addresses, social security numbers, dates of birth, and other identifying information to apply for various credit cards in the clients' names. ASHER did this without the clients' knowledge. ASHER

used that information to apply for credit cards by mail, over the internet, and telephonically, in identities other than his own.

16.     It was a part of the scheme that after opening the fraudulent accounts, ASHER utilized the fraudulently obtained credit cards to receive cash advances and to obtain goods and services for his personal benefit and enrichment. ASHER incurred charges on the credit cards up to and over the pertinent credit limits, and made only minimal payments on the accounts until the accounts were closed.  ASHER's clients, in whose identities the cards were obtained, learned of the credit card accounts only after the accounts were reported as delinquent or closed.

17.     The following table summarizes the losses resulting from the fraudulent credit cards obtained by defendant ASHER through the unauthorized use of client information:

| Date Opened | Name on Account | Credit Card Company | Account Number | Unpaid Balance |
|---|---|---|---|---|
| 1/17/99 | George Aboagye | American Express | 372264267992008 | $9,989.49 |
| 2/16/99 | George Aboagye | American Express | 373277320102000 | $7,532.20 |
| 5/25/99 | Stephen Amoako | American Express | 372505246232001 | $8,893.16 |
| 12/29/99 | Ashford Opoku | American Express | 372269359881001 | $4,877.43 |
| 5/17/00 | Ashford Opoku | American Express | 373076612161009 | $1,030.05 |
| 1/16/99 | George Aboagye | Capital One | 4388641540358590 | $1,202.00 |
| 3/16/00 | Ashford Opoku | Capital One | 4802131718241263 | $5,417.62 |
| 9/13/00 | Ashford Opoku | Capital One | 4388641774632553 | $ 947.61 |
| 9/9/98 | Stephen Amoako | Capital One | 4802131504485371 | $5,557.70 |
| 8/17/00 | Reshad Hamidi | Capital One | 4802131763123168 | $5,362.51 |
| 8/00 | Ashford Opoku | Chase Manhattan | 5491041489004027 | $7,923.13 |
| 8/00 | Ashford Opoku | Chase Manhattan | 5491041480132090 | $ 468.42 |

| Date Opened | Name on Account | Credit Card Company | Account Number | Unpaid Balance |
|---|---|---|---|---|
| 12/00 | Rashad Hamidi | NextCard | 4254983005900487 | $9,264.12 |
| 9/9/00 | Ashford Opoku | Citibank Universal | 5491130389225582 | $5,661.84 |
| 5/8/01 | Stephen Amoako | Citi BP Oil | 4781974557 | $ 363.16 |

18.     It was a part of the scheme that on or about March 16, 2000, ASHER completed an application for a Capital One Visa card using the name, date of birth, and social security number of his client, Ashford Opoku. ASHER signed the name Ashford Opoku to the application, which ASHER caused to be mailed to Capital One by means of the Unites States Postal Service on or about March 16, 2000. The billing address provided on the application was C & A Associates, 3332 Georgia Ave N.W., #3, Washington, D.C. 20010. Charges were posted to this credit card account from on or about May 13, 2000 through January 30, 2002. ASHER maintained this fraudulent account by making minimal partial payments towards the balance on the account so that the account would not be closed. In or about February 2002, the account was closed by Capital One with an unpaid balance of $5,417.62.

19.     From on or about October 3, 2000, and continuing until on or about April 18, 2001, ASHER, in the District of Columbia and elsewhere, for the purpose of executing, and attempting to execute, the above-described scheme and artifice to defraud, knowingly did cause to be delivered by mail a matter or thing according to the direction thereon, that is, partial credit card payments to Capital One, and did place and caused to be placed in a post office and authorized depository for mail matter a matter or thing to be sent and delivered by the Postal Service, that is, partial credit card payments to Capital One, as described below for each count:

| Count | Date on Check | Description of Transaction | Chevy Chase Bank Check Number & Amount |
|---|---|---|---|
| ONE | 10/3/00 | ASHER mailed a check, as partial payment to Capital One, which he signed in the name of Clifford S. Asher | Check #438 in the amount of $179.41 |
| TWO | 1/8/01 | ASHER mailed a check, as partial payment to Capital One, which he signed in the name of Christian S. Asher | Check #137 in the amount of $108.00 |
| THREE | 2/8/01 | ASHER mailed a check, as partial payment to Capital One, which he signed in the name of Christian S. Asher | Check #177 in the amount of $255.59 |
| FOUR | 4/2/01 | ASHER mailed a check, as partial payment to Capital One, which he signed in the name of Clifford C. Asher | Check #608 in the amount of $195.00 |
| FIVE | 4/18/01 | ASHER mailed a check, as partial payment to Capital One, which he signed in the name of Christian S. Asher | Check #243 in the amount of $162.79 |

**(Mail Fraud,** in violation of Title 18, United States Code, Section 1341)

## COUNTS SIX THROUGH EIGHT – BANK FRAUD

### Introduction

1. The allegations contained in paragraphs 1 through 6 of the Introduction to this Indictment are realleged and incorporated as if fully set forth herein.

2. On or about October 28, 2000, Ruby Hawkins retained ASHER to represent her in a probate matter in District of Columbia Superior Court regarding her inheritance from an estate. The name of this probate matter was In re: Estate of Frank Fisher, Admin No. 1961-00 and was before The Honorable Judge Jose M. Lopez (hereinafter, the "Fisher Estate").

3. The Fisher Estate maintained a bank account at Industrial Bank, N.A., 4812 Georgia Avenue, N.W., Washington, D.C. 20011 (hereinafter, the "Industrial Account"). At all times relevant to this

Indictment, Industrial Bank was a federally-insured institution with deposits insured by the Federal Deposit Insurance Corporation.

4. In the course of representing Ms. Hawkins, ASHER gained access to blank checks from the Industrial Account.

5. At all times relevant to this Indictment, Chevy Chase Bank was a federally-insured institution with deposits insured by the Federal Deposit Insurance Corporation.

### Description of the Scheme

6. The allegations contained in paragraphs 8 through 18 of Counts One through Five of this Indictment are realleged and incorporated as if fully set forth herein.

7. It was a part of the scheme that ASHER took three blank checks from the Industrial Account, and then made each of these checks payable to himself, forged Ms. Hawkins' signature at the bottom of the checks, negotiated the checks, and then obtained cash for his personal benefit without the knowledge or authorization of Ms. Hawkins. At no time did Ms. Hawkins ever give ASHER permission to prepare these checks, to sign her name on these checks, or to deposit the money derived from these checks into ASHER's own personal bank account.

8. It was part of the scheme that the bank account into which ASHER deposited these forged and unauthorized checks, was ASHER's own personal bank account located at Chevy Chase Bank, located at 7501 Wisconsin Avenue, Chevy Chase, Maryland. Chevy Chase Bank honored these checks presented by ASHER as if they were legitimate.

9. On or about the following dates, in the District of Columbia and elsewhere, ASHER did knowingly execute and attempt to execute the aforesaid scheme and artifice to defraud Chevy Chase Bank,

and to obtain monies, funds and credits under the custody and control of Chevy Chase Bank by means of materially false and fraudulent pretenses, representations and promises, by causing the following transactions for each count listed below:

| Count | Date on Check | Description of Transaction | Industrial Bank Check Number & Amount |
|---|---|---|---|
| SIX | 12/15/00 | ASHER deposited a check, containing the forged signature of Hawkins, payable to himself | Check #96 $3,500.00 |
| SEVEN | 12/29/00 | ASHER deposited a check, containing the forged signature of Hawkins, payable to himself | Check #97 $800.00 |
| EIGHT | 1/8/01 | ASHER deposited a check, containing the forged signature of Hawkins, payable to himself | Check #100 $500.00 |

(**Bank Fraud**, in violation of Title 18, United States Code, Section 1344)

## COUNT NINE – INTERSTATE TRANSPORTATION OF STOLEN PROPERTY

### Introduction

1. The allegations contained in paragraphs 1 through 6 of the Introduction to this Indictment and paragraphs 8 through 18 of Counts One through Five of this Indictment are realleged and incorporated as if fully set forth herein.

2. The allegations contained in paragraphs 7 and 8 of Counts Six through Eight of this Indictment are realleged and incorporated as if fully set forth herein.

3. On or about June 24, 2002, Luis Rodriguez obtained a home equity loan from Approved Federal Savings Bank, located at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454. As a result of this transaction, Rodriguez received check number 0077444, in the amount of $50,186.46, which represented the proceeds from this refinancing (hereinafter, the "Settlement Check"). This Settlement

Check was drawn on the account of the title company, Troese/Hughes Title Services, Inc., located in Greenbelt, Maryland. The Settlement Check was payable to Mr. Rodriguez and his wife, Sandra Rodriguez.

4. On or about June 25, 2002, ASHER told Rodriguez that he could obtain a better interest rate for him with a different lender. Rodriguez then hired ASHER to assist him in obtaining a more favorable loan. On or about June 25, 2002, under ASHER's direction and with his assistance, Rodriquez applied for a second loan, from another lender.

5. On or about July 10, 2002, ASHER accompanied Rodriguez to Allfirst Bank, located at 6434 Georgia Avenue, N.W., Washington, D.C. At ASHER's direction and request, Rodriguez endorsed the above-referenced Settlement Check to ASHER. ASHER then took this endorsed check and deposited it into an account owned and controlled by ASHER at Allfirst Bank. At that time, ASHER told Rodriguez that he would mail a check from his Allfirst Bank account to Approved Federal Savings Bank to pay off the loan made payable by Approved Federal Savings Bank.

6. ASHER never paid off Rodriguez's loan at Approved Federal Savings Bank, as he had represented and promised Rodriguez he would do. ASHER kept all of the proceeds from the Settlement Check for his own personal enrichment.

7. The Settlement Check deposited by ASHER at the branch of Allfirst Bank in Washington, D.C. located at 6434 Georgia Avenue, N.W., Washington, D.C., was transported to the Allfirst Bank processing center in Baltimore, Maryland.

**Interstate Transportation of Stolen Property**

8.  On or about July 10, 2002, ASHER did knowingly and intentionally, in the District of Columbia and elsewhere, transport, transmit, or transfer in interstate or foreign commerce, goods, securities, or money, that is, the Settlement Check, of the value in excess of $5,000, that is a value of $50,186.46, knowing the Settlement Check to have been taken by fraud.

(**Interstate Transportation of Property Taken by Fraud,** in violation of Title 18, United States Code, Section 2314)

### COUNT TEN – FRAUD IN THE FIRST DEGREE

1.  The allegations contained in paragraphs 1 through 6 of the Introduction to this Indictment and paragraphs 8 through 18 of Counts One through Five of this Indictment are realleged and incorporated as if fully set forth herein.

2.  The allegations contained in paragraphs 7 and 8 of Counts Six through Eight of this Indictment are realleged and incorporated as if fully set forth herein.

3.  From between on or about September 1998 and June of 2001, in a continuing course of conduct, in the District of Columbia and elsewhere, ASHER engaged in a scheme and systematic course of conduct with intent to defraud to obtain property of clients of his and others by means of false or fraudulent pretenses, representations, and promises, and thereby obtained property of a value of $250 or more belonging

to clients of his, consisting of approximately $160,000.00 in monies.

(**Fraud in the First Degree**, in violation of Title 22, District of Columbia Code, Section 3821(a) (1981 ed.))

                                                   A TRUE BILL:


                                                   FOREPERSON.


Attorney of the United States in
and for the District of Columbia